Norfolk. Under all the circumstances, I think that the libellants are entitled to the sum of $35 each.

Decree accordingly.

## Case No. 6,176a.

### The HARVEST QUEEN.

[See Case No. 91.]

## Case No. 6,177.

### HARVEY v. ALLEN et al.

[16 Blatchf. 29;[1] 2 Browne, Nat. Bank Cas. 439; 25 Int. Rev. Rec. 95.]

Circuit Court, S. D. New York.   Feb. 19, 1879.

ATTACHMENT—NATIONAL BANKS—STATE COURTS— RECEIVERS—PARTIES—COSTS.

1. After a circulating note of a national bank, which it had failed to redeem in lawful money, had been protested, under section 46 of the act of June 3, 1864 (13 Stat. 113), an attachment from a state court was levied on moneys of said bank on deposit in another national bank, to secure a debt from it to A. Subsequently, a receiver of the bank was appointed, under section 50 of said act. *Held*, that, under section 52 of said act, said levy was void.

[Cited in Roberts v. Hill, 24 Fed. 572.]

2. The receiver, having applied to the state court to dissolve such attachment, without becoming a party to the suit in the state court, and such motion being denied, and he having then immediately brought this suit against A., and the bank in which the moneys were on deposit, and the sheriff who levied the attachment, to assert his title to such moneys. *Held*, that he was entitled to such relief.

3. A. having, after process in this suit was served on the defendants, obtained a judgment in his suit in the state court, and collected it by execution against the moneys so attached, this court decreed that A. should pay directly to the plaintiff the money he had so collected, and the bank in which the moneys had been on deposit should pay such money if, and only if, it could not be collected from A.; that such bank should pay costs to the plaintiff; that such bank should not have costs against A.; that A. should pay costs to the plaintiff; that the sheriff should not have costs against the plaintiff; that the plaintiff should recover from A. the costs of making the sheriff a party, and the costs of the sheriff's defence, the latter costs to be paid over to the sheriff by the plaintiff, when collected; and that the bank in which the moneys had been on deposit should respond to the plaintiff for them, with interest from the time when process in this suit was served on it, subject to the said decree as to payment by A. of what he had received of such moneys.

[This was a bill in equity by Joel D. Harvey, receiver of the Scandinavian National Bank of Chicago, against Benjamin F. Allen and others.]

George Bliss, for plaintiff.

Michael H. Cardozo, for Allen, Stephens & Co.

Aaron J. Vanderpoel and J. Sterling Smith, for the Broadway Bank and the sheriff.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

BLATCHFORD, Circuit Judge. The Scandinavian National Bank of Chicago was a bank organized under the national banking act, and subject to its provisions. It was located at Chicago, Illinois. On the 10th of December, 1872, it failed to redeem a circulating note of the denomination of $5, issued by it, when payment thereof was legally demanded at its office in Chicago, during the usual hours of business. On the same day a notary public duly protested said note for non-payment, and served a written notice of the protest on the president of the bank, and it stopped doing business, and a United States bank examiner took possession of all of its books and assets. Section 46 of the act of June 3, 1864 (13 Stat. 113), provides that, if any national bank shall fail to redeem in lawful money any of its circulating notes, when payment thereof shall be lawfully demanded, during the usual hours of business, at its office, they may be protested by a notary public. The notary is required to give notice of the protest to the president or cashier of the bank, and to forward notice of the protest to the comptroller of the currency. Section 50 authorizes the comptroller, on becoming satisfied, as above specified, that any bank has so refused to pay its circulating notes and is in default, to forthwith appoint a receiver, who, under the direction of the comptroller, shall take possession of the books, records and assets of the bank, and collect its debts. Provision is made for the receiver to turn the assets into money and pay such money to the treasurer of the United States, and for the comptroller to distribute such money pro rata among the creditors of the bank. Section 52 is in these words: "All transfer of the notes, bonds, bills of exchange and other evidences of debt owing to any association, or of deposits to its credit, all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor, all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void." On the 18th of December, 1872, the comptroller, by an instrument in writing reciting the necessary preliminary facts, appointed the plaintiff in this suit to be receiver of said bank, with all the powers, duties and responsibilities given to or imposed upon a receiver under the provisions of said act. At the time the Scandinavian Bank failed, the National Broadway Bank, another national bank, located in the city of New York, and one of the defendants in this suit, had on deposit moneys belonging to the Scandinavian Bank, subject to its draft.